## FUALAAU HANIPALE, FAAMALELE TAEAOTUI, and MAGGIE PULLMAN, Plaintiff

v.

## MISIAITA IUTA and OPAPO AFUALO, Defendants

High Court of American Samoa
Land and Titles Division

LT No. 23-96

December 9, 1996

Before RICHMOND, Associate Justice, TAUANU'U, Chief Associate Judge, and AFUOLA, Associate Judge.

Counsel:     For Plaintiffs, Charles V. Ala'ilima
             For Defendants, Tautai A.F. Fa'alevao

Opinion and Order:

Plaintiffs Faulaau Hanipale ("Hanipale"), Faanalele Taeaotui ("Taeaotui") and Maggie Pullman ("Pullman") brought this action to acquire access to their lots across land owned or formerly owned by defendants Misiaita Iuta ("Iuta") and Opapo Afualo ("Afualo"). The case was tried on October 31, 1996, with both counsel present.

FINDINGS OF FACT

Iuta once owned, as individually owned land, approximately 24.995 acres in an odd-shaped tract of land called "Gaoa" in Ili'ili, American Samoa. He split this land into four, unevenly divided parcels, numbered for our purposes: #1, 16.513 acres; #2, 3.873 acres;, #3, 3.289 acres; and #4, 1.32 acres. The southern boundaries, moving east to west, of parcels #3, #1 and #4 front the main public road between the Pago Pago International Airport and Ili'ili.

Parcel #3 includes a substantial portion of the eastern side of the entire tract. Parcel #2 lies to the north of parcel #3, up to the northern boundary of the tract. Parcel #1 extends the full north-south distance of the tract and covers the bulk of the western side of the tract. Parcel #4 takes up the remainder of the western side at the southern end of the tract along the public road.

Afualo bought parcel #3, parcel #2, and the northern portion of parcel #1 from Iuta in the early 1970s. Afualo then constructed a road ("the private road") from the public road across parcel #3 and into his plantation on his portion of parcel #1. Iuta reacquired Afualo's portion of parcel #1 in the 1980s. The documents did not contain any grant or reservation of the private road as a right of way for the benefit of the reacquired portion of parcel #1.

Later, in 1984, Hanipale purchased from Iuta a 0.5 acre lot in parcel #1 on the east side of the private road put in by Afualo. In 1985, Pullman, with other members of the Penitusi family, bought two lots, totaling 0.5 acres, in parcel #1 on the west side of the private road, just south of the Hanipale lot. Their grantor was Liaiana Salausa, a successor to Iuta. In 1991, Taeaotui acquired from Iuta a 0.97 acre lot in parcel #1 at the north end of the private road, most of which is just north of the Hanipale lot.

The deeds for these three transactions also did not contain any grant or reservation of the private road as a right of way for the benefit of the lots sold. However, abutting lot owners were able to traverse the private road to their property until Afualo permitted his sister to construct a house in the area of the northwest corner of parcel #3 several years ago. This house, with a surrounding stone wall on three sides, obliterated a stretch of the private road and effectively blocked access by this means to the Hanipale, Pullman, Taeaotui and neighboring lots in parcel #1.

Owners who required regular access made temporary arrangements to reach their lands by crossing other land from another private road further west. However, their benefactor has given notice to cease using this alternative. Meanwhile, Afualo disclaims accountability. He asserts that use of the private road is solely under his control, so far as Hanipale,

93

Taeaotui and Pullman are concerned, and that if they are landlocked owners in parcel #1, they must look to their grantors, not him, for relief.

## DISCUSSION

Fundamentally, the decision in this case turns on whether an easement by implied grant exists under the facts. The court has applied this common law doctrine before. *Letuli v. Lei*, 22 A.S.R.2d 77, 83 (Lands & Title Div. 1992), *aff'd* AP No. 20-92, slip op. at 5-7 (App. Div. Nov. 15, 1994) (reversed in part on a different issue).

■■■ An easement by implied grant arises when the owner conveys of one of two adjacent parcels of land or subdivides a single parcel, with the parties' silent intent that the grantee takes the land with all benefits that appear at the time of the transfer to belong to the land with respect to the land the grantor retains. *Letuli*, 22 A.S.R.2d at 83. The parties must manifest this intent through an existing use of the retained land that is apparent, permanent, and reasonably necessary to the beneficial enjoyment of the transferred land. *Id.* The implied grant will extend to reasonably foreseeable changes in the present use. *Id.*

Iuta and Afualo have been in the business of subdividing the entire tract for several years and, through numerous inaccurate surveys, have managed to create a maze of overlapping lots. They must be held to respect the clearly discernible consequences, including the use of the private road, of their extensive land transactions. When Iuta reacquired the northern portion of parcel #1 from Afualo, the private road was in use and had already ripened into a permanent feature. Iuta and Afualo knew their respective grantees would purchase lots along the full length of this private road and would expect access to their lots by this means. Those grantees actually used the private road in this manner for a substantial period, until Afualo caused the blockade.

■■ Afualo points to the alternative means used to access these lots after Afualo blocked the private road as negating necessity. Strict necessity is a requisite when the created easement is a way of necessity by operation of law. *Sese v. Leota*, 9 A.S.R.2d 25, 30 Lands & Titles Div. 1988), *aff'd Leota v. Sese*, 12 A.S.R.2d 18 (App. Div. 1989). However, only reasonable necessity is required to sustain an easement by implied grant. *Letuli*, 22 A.S.R.2d at 83.

The owner has rightfully given notice to stop using the alternative route over his land, possibly making use of the private road absolutely essential. However, even if this owner agreed to keep the second route open, Iuta reacquired the northern portion of parcel #1, and Hanipale, Taeaotui and Pullman, as his successors, purchased lots in parcel #1

94

along the private road, expecting that the private road in parcel #3 would permanently continue to be their means of ingress and egress. Their belief was distinctly sensible. Use of the private road was, and still is, reasonably necessary for this purpose.

## ORDER

1. We declare that an easement for roadway and utility purposes, over, under and above the full length of the private road on parcel #3, was created by implied grant at the time Iuta reacquired the northern portion of parcel #1 from Afualo for the benefit of parcel #1 and the lots later subdivided along the private road in parcel #1, as the dominant tenements, and for the burden of parcel #3, as the servient tenement, and hold Afualo liable to Hanipale, Taeaotui and Pullman for their continued use of the private road in parcel #3.[1]

2. Since a solution to the closure of the private road, without removing a portion of Afualo's sister's house and the stone wall around the house, is on the table, we will postpone fashioning a final remedy, including but not limited to injunctive relief and monetary damages, for a period of 90 days, or until March 10, 1997, to give the parties opportunity to successfully settle on this proposed or any other viable solution. During this 90-day period, any party may move the court to conduct a further evidentiary proceeding, if necessary or appropriate, as relevant to developing the final remedy.

It is so ordered.

_____

---

[1] This order obviates any need to presently rule on Iuta's liability, if any, to Hanipale, Taeaotui and Pullman in this action.